# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# ATHENS DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, : : : | |
| Plaintiff, : : | |
| : | CIVIL ACTION NO. |
| v. : : | |
| PAPA JOHN'S USA, INC., and : PAPA JOHN'S INTERNATIONAL, : INC., : : | |
| : | JURY TRIAL DEMAND |
| Defendants. : : | |

## COMPLAINT

This is an action under Title I of the Americans with Disabilities Act of 1990, as amended (the "ADA"), and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Michael Barnes ("Barnes"), who was adversely affected by them. The Equal Employment Opportunity Commission (the "Commission" or "EEOC") alleges that Defendants Papa John's USA, Inc., and Papa John's International, Inc., discriminated against Barnes when they denied his request for a reasonable accommodation and terminated his employment because of his disability.

# JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to: Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) and 2000e-6, and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of Georgia, Athens Division.

# PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. Defendant Papa John's USA, Inc., is a company that owns, licenses, franchises, operates, and/or contracts for the operation of a chain of pizza restaurants

within the United States typically referred to as "Papa John's Pizza."

5. Defendant Papa John's International, Inc., is another company related to the operation of a chain of pizza restaurants commonly referred to as "Papa John's Pizza," operating throughout the United States and internationally. Defendant Papa John's International, Inc., operates a chain of pizza restaurants referred to as "Papa John's Pizza" through employees, franchising relationships, contractual arrangements, and/or subsidiary, holding, operations, or otherwise affiliated or related entities, including, for example, Defendant Papa John's USA, Inc.

6. Defendant Papa John's International, Inc. provides operational support to other entities related to the operation of a chain of pizza restaurants commonly referred to as "Papa John's Pizza;" including, by way of example, the provision of employment contracts and other materials, legal support, marketing services, and human resources support and services.

7. At all relevant times, Defendants Papa John's USA, Inc., and Papa John's International, Inc., have conducted business in the State of Georgia and have continuously maintained at least 15 employees.

8. At all relevant times, Defendants Papa John's USA, Inc., and Papa John's International, Inc., have continuously been employers engaged in an industry affecting commerce under 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5),

(7).

9. At all relevant times, Defendants Papa John's USA, Inc., and Papa John's International, Inc., have been covered entities under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

10. At all times relevant to this action, the Papa John's Pizza store number 210, located at 498 Baxter St., Athens, Georgia 30605 ("the Restaurant") was run by a Store Manager ("the Store Manager").

11. The Restaurant is one of the chain pizza restaurants operated by and/or on behalf of Defendant Papa John's USA, Inc.

12. The Restaurant is one of the chain pizza restaurants operated by and/or on behalf of Defendant Papa John's International, Inc., through the related entity Defendant Papa John's USA, Inc.

13. At all times relevant to this action, the Store Manager was employed by, was franchisor for, and/or otherwise acted on behalf of Defendant Papa John's USA, Inc.

14. At all times relevant to this action, the Store Manager was employed by, was franchisor for, and/or otherwise acted on behalf of Defendant Papa John's International, Inc.

## ADMINISTRATIVE PROCEDURES

15. More than thirty days prior to the institution of this lawsuit, Barnes filed a Charge of Discrimination with the Commission alleging violations of the ADA by Defendants.

16. On July 28, 2022, the Commission issued a Letter of Determination finding reasonable cause to believe that the ADA had been violated and inviting Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

17. On August 17, 2022, the Commission issued to Defendants a Notice of Failure of Conciliation advising Defendants that the Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

18. All conditions precedent to the institution of this lawsuit are fulfilled.

## STATEMENT OF FACTS

19. Barnes is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8). Barnes has a physical impairment, blindness, which substantially limits him in at least, but limited to, the following major life activity: the normal functioning of a special sense organ, the eyes.

20. Barnes has suffered from several ocular ailments since birth, including congenital glaucoma, multiple eye infections, and a severe corneal infection in or around October 2008, which rendered him permanently, totally, and legally blind.

21. Since becoming blind, Barnes received and has relied on service animals—commonly referred to as "guide dogs"—to assist him with certain life activities including traveling, ambulating, and caring for himself.

22. In 2016, after retiring his original service animal, Barnes applied for and received Indie, a black English lab, to serve as his guide dog. Indie was and remains qualified, trained, and appropriately certified to serve as a service animal for individuals with disabilities, including individuals who are blind.

23. In or around February 2020, Barnes called the Restaurant to ask whether it was hiring. Barnes spoke to the Store Manager and disclosed his disability and reliance on Indie. During the call, Barnes informed the Store Manager that he could not work at the Restaurant unless Indie could guide him to and from work. Barnes clarified that he did not need Indie at his feet during his shifts and that she could be kept tied or crated in a safe location away from both customers and food preparation.

24. During the first February 2020 call, the Store Manager encouraged Barnes to come into the Restaurant to interview and apply for a vacant position.

During the call, the Store Manager also told Barnes that neither his disability nor his need to keep Indie on the premises during shifts would be a problem for Barnes's employment at the Restaurant.

25. On or around February 19, 2020, Barnes and Indie traveled to the Restaurant, the Store Manager interviewed Barnes for a vacant position, and the Store Manager helped Barnes complete his employment application paperwork by reading certain documents out loud to Barnes and filling in the information Barnes provided.

26. The Store Manager and Barnes also discussed Barnes's need for the reasonable accommodation of keeping Indie on the Restaurant's premises during his shifts, out of customer view and away from food preparation activities. Together, the Store Manager and Barnes discussed multiple options for Barnes's accommodation, including keeping Indie secured or crated in the Restaurant's conference room or under the Store Manager's desk.

27. The Store Manager indicated to Barnes that providing such an accommodation would not pose any problem, hardship, burden, or inconvenience to the Store Manager, the Restaurant, or either Defendant.

28. On or about February 24, 2020, Defendant Papa John's USA, Inc., hired Barnes to work at the Restaurant where his first position would be at the dough

station.

29. In or around March 2020, before Barnes began working at the Restaurant, Defendants Papa John's International, Inc. and Papa John's USA, Inc., instituted a nationwide hiring freeze in response to the global COVID-19 pandemic, which affected Barnes's position.

30. In or around March 2020, the Store Manager told Barnes that he could start work when the Restaurant's business increased.

31. In or around May 2020, the Store Manager informed Barnes that the Restaurant's business had sufficiently increased for Barnes to begin work.

32. On approximately May 21, 2020, Barnes (and Indie) returned to the Restaurant and resubmitted Defendants' employment application materials.

33. The Store Manager assisted Barnes in completing and submitting Defendants' formal paperwork for a request for a reasonable accommodation.

34. Barnes requested the following reasonable accommodation: that Indie be allowed to remain on the Restaurant's premises during his shifts.

35. On multiple occasions, the Store Manager represented to Barnes that his requested accommodation was reasonable and would not present an issue.

36. At all times relevant to this action, Defendant Papa John's International, Inc., operated a committee called the Accommodation Request Committee, at least

some of the members of which were high-level Human Resources Professionals employed by Defendant Papa John's International, Inc.

37. At all times relevant to this action, the Accommodation Request Committee was a committee which, among other things, reviewed employee requests for reasonable accommodations under the ADA and determined whether to provide or deny the employees' requested accommodations.

38. At all times relevant to this action, Defendant Papa John's International, Inc.'s Accommodation Request Committee evaluated, reviewed, analyzed, and made accommodation determinations for and on behalf of other Papa John's entities, including Defendant Papa John's USA, Inc.

39. On or around June 11, 2020, the Accommodation Request Committee met, reviewed, and evaluated Barnes's request for a reasonable accommodation. The Committee denied Barnes's request and decided that he should be terminated. Committee minutes regarding Barnes's requested accommodation state: "cannot accommodate—separate employment. Send letter."

40. At no time during the Accommodation Request Committee's evaluation of Barnes's requested accommodation or prior to its decision regarding the requested accommodation did any committee member or agent thereof reasonably investigate Barnes's requested accommodation or communicate with

9

Barnes regarding his request.

41. Defendant Papa John's USA, Inc. rejected Barnes's requested accommodation because it felt that having animals in the restaurant would pose a health and safety risk.

42. At no point during the Accommodation Request Committee's evaluation of Barnes's requested accommodation was any code, law, or regulation identified that would prohibit granting the accommodation.

43. At no point during the Accommodation Request Committee's evaluation of Barnes's requested accommodation was any specific "health and safety risk" identified or articulated.

44. Defendant Papa John's USA, Inc. did not identify any law, code, or regulation that would prohibit granting Barnes's requested accommodation.

45. Defendant Papa John's USA, Inc. did not identify or articulate any specific "health and safety risk".

46. Neither Defendant conducted an individualized assessment of Barnes's requested accommodation.

47. Neither Defendant identified nor articulated any undue hardship Barnes's requested accommodation would pose.

48. The Accommodation Request Committee rejected Barnes's request

based on improper stereotypes about service animals and their presence in restaurants or other food service establishments.

49. On or around June 11, 2020, the Store Manager informed Barnes of the Accommodation Request Committee's rejection of Barnes's requested reasonable accommodation. The Store Manager told Barnes that he could not work for the company with his dog. The Store Manager told Barnes that unless he could come up with an alternative accommodation—one not involving Indie—then Barnes could not work there, and he would be terminated.

50. Barnes relied on Indie and could not work at Defendants' store without having her reasonably accessible.

51. Defendants Papa John's USA, Inc. and Papa Johns' International, Inc. terminated Barnes on or around June 11, 2020.

52. The effect of the practice(s) complained of above has been to deprive Barnes of equal employment opportunities, in the form of lost wages and lost job opportunities, and otherwise adversely affected his status as an employee because of his disability.

53. The unlawful employment practices complained of above were intentional.

54. The unlawful employment practices complained of above were done

with malice and/or with reckless indifference to Barnes's federally protected rights.

55. Since at least June 2020, Defendants Papa John's USA, Inc. and Papa John's International, Inc., have engaged in unlawful employment practices in violation of Section 102 of the ADA, 42 U.S.C. § 12112(a) and (b). These unlawful employment practices include but are not limited to: (1) unlawfully failing to provide a qualified employee with a disability a reasonable accommodation; and, (2) unlawfully terminating a qualified individual because of his disability.

### *Allegations Common to All Claims*

56. Barnes is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).

57. At all times relevant to this action, Barnes was able to perform the essential functions of his position at the Restaurant's dough station with a reasonable accommodation.

58. Defendants' actions taken with respect to Barnes, as described above, were taken and/or ratified by individuals within sufficiently elevated company leadership so as to be attributable to Defendants.

### *Failure to Accommodate*

59. Barnes timely identified and requested a reasonable accommodation that would allow him to perform the essential functions of his job. Namely, that he

be allowed to keep Indie on the restaurant's premises, secured and out of the way of both food preparation activities and customers during his shifts.

60. Barnes's requested accommodation was reasonable.

61. Defendant Papa John's USA, Inc., by and through the Accommodation Request Committee run and/or operated by Defendant Papa John's International, Inc., unreasonably denied Barnes's requested accommodation.

62. Defendant Papa John's USA, Inc., by and through the Accommodation Request Committee run and/or operated by Defendant Papa John's International, Inc., failed to conduct a reasonable investigation into Barnes's requested accommodation, failed meaningfully to interact with or engage with Barnes or anyone on Barnes's behalf related to the requested accommodation.

63. Defendant Papa John's USA, Inc., by and through the Accommodation Request Committee run and/or operated by Defendant Papa John's International, Inc., being presented with a request for a reasonable accommodation, failed to grant the accommodation to Barnes that would have allowed him to perform the essential functions of his job.

### *Discriminatory Termination*

64. Defendant Papa John's USA Inc., by and through its own actions and those of the Accommodation Request Committee operating on its behalf, terminated

Barnes because of his disability and/or need for a reasonable accommodation.

65. Defendant Papa John's International, Inc., acting through its Accommodation Request Committee and through its subsidiary or affiliated company, Papa John's USA, Inc., terminated Barnes because of his disability and/or need for a reasonable accommodation.

## PRAYER FOR RELIEF

**WHEREFORE,** the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, their officers, successors, assigns and all persons in active concert or participation with them, from engaging in any employment practice which discriminates on the basis of disability.

B. Order Defendants to institute and carry out policies, practices and programs which provide equal employment opportunities for all employees with disabilities and which eradicate the effects of their past and present unlawful employment practices.

C. Order Defendants to make Barnes whole, by providing appropriate back pay in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices, including, but not limited to reinstatement or front pay in lieu of reinstatement.

D. Order Defendants to make Barnes whole, by providing compensation

for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E.  Order Defendants to make Barnes whole, by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices described above, including inconvenience, emotional pain and suffering, anxiety, stress, depression, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F.  Order Defendants to pay Barnes punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial.

G.  Grant such further relief as the Court deems necessary and proper in the public interest.

H.  Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by this Complaint.

Respectfully submitted,

GWENDOLYN YOUNG REAMS
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

MARCUS G. KEEGAN
Regional Attorney

LAKISHA DUCKETT ZIMBABWE
Assistant Regional Attorney

<u>/s/ *Adam T. Mills*</u>
Adam T. Mills
Trial Attorney
Georgia Bar No. 123930
U.S. Equal Employment Opportunity Commission
Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, GA 30303
adam.mills@eeoc.gov
P: 470-531-4807
F: 404-562-6905